# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | **WILLIAM T. HART** | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 6502 | **DATE** | JUNE 28, 2001 |
| **CASE TITLE** | UNITED STATES ex rel. ANIL K. BIDANI, M.D. v. EDMUND J. LEWIS, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Anil Bidani's motion for rehearing [117] is granted in part and denied in part. The judgment previously entered in this case is vacated. All claims and defendants remain dismissed from this action except the discount claims against defendants Edmund Lewis and American Medical Supply Company. In open court on August 29, 2001 at 11:00 a.m., the remaining parties shall submit an original and one copy of a final pretrial order in full compliance with Local Rule 16.1 and Local Rule Form 16.1.1.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 4 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUN 29 2001 date docketed | 130 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 06/28/01 date mailed notice | |
| CW | courtroom deputy's initials | FILED FOR DOCKETING 01 JUN 28 PM 5:51 Date/time received in central Clerk's Office | mqm mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ex rel.     )
ANIL K. BIDANI, M.D.,                )
                                     )
                Plaintiff,           )
                                     )
      v.                             )    No. 97 C 6502
                                     )
EDMUND J. LEWIS, AMERICAN            )
MEDICAL SUPPLY CORPORATION, and      )
CIRCLE MEDICAL MANAGEMENT            )
CORPORATION,                         )
                                     )
                Defendants.          )

DOCKETED
JUN 2 9 2001

## MEMORANDUM OPINION AND ORDER

A qui tam action pursuant to the False Claim Act ("FCA") was initiated by the relator, Anil Bidani, M.D., a former employee of an entity controlled by defendant Edmund Lewis, M.D. The other two defendants are entities owned and controlled by Lewis, American Medical Supply Corporation ("AMS") and Circle Medical Management Corporation ("CMM"). Lewis was the Chief of Nephrology at Rush-Presbyterian-St. Luke's Medical Center in Chicago, Illinois. Bidani claimed that defendants obtained excessive Medicare reimbursements for kidney dialysis supplies. Defendants moved to dismiss the action and, initially, all claims were dismissed except for the "kickback" claim that Lewis was receiving an illegal kickback by referring dialysis patients to a company he owned (AMS) for dialysis supplies. See United States

ex rel. Bidani v. Lewis, No. 97 C 6502 (N.D. Ill. Dec. 29, 1998) (Docket Entry 25) ("Bidani I"). It was found[1] that all pertinent facts underlying relator's claims had been publicly disclosed, see id. at 9-10, and that the only pertinent fact for which relator was an original source was Lewis's common ownership of AMS and CMM, see id. at 12.[2] The kickback claim was the only claim for which this fact was held to be an essential element. Id. at 12-15. On relator's motion for reconsideration, the "supplier" claim[3] was reinstated because Lewis's common ownership was held to be an essential element of that claim as well. See United States ex rel. Bidani v. Lewis, 1999 WL 163053 *1-3 (N.D. Ill. March 12, 1999) ("Bidani II"). Bidani II, 1999 WL 163053 at *3-9, also held that the applicable statute of limitations limited relator's damages claims to damages accruing September 15, 1991 or later.

After completing extensive discovery, both sides moved for summary judgment. In regard to both motions, relator made arguments based both on some claims that had previously been

---

[1] As to the jurisdictional issues raised in the motion to dismiss, it was appropriate to find facts. See Bidani I, at 6-7.

[2] A jurisdictional requirement for an FCA claim is that the relator be an original source of information if the claim is based upon information that has been publicly disclosed. 31 U.S.C. § 3730(e)(4); United States v. Bank of Farmington, 166 F.3d 853, 858-59 (7th Cir. 1999).

[3] The supplier claim is based on AMS representing it was a dialysis supplier even though it allegedly did not qualify as a dialysis supplier because of Lewis's common ownership of both AMS and CMM, a dialysis facility.

dismissed and some claims that had never been included in the original or amended complaint. Consideration of the summary judgment motions, however, was limited to the kickback and supplier claims. See United States ex rel. Bidani v. Lewis, 2001 WL 32868 *4 (N.D. Ill. Jan. 12, 2001) ("Bidani III").[4] As to the supplier and kickback claims, defendants again argued on summary judgment (as they had in their motion to dismiss) that relator was not an original source. As to these two claims, this jurisdictional argument was again rejected. See id. at *3. See also Bidani I, at 6-15; Bidani II, 1999 WL 163053 at *1-3 & n.4. However, on the merits, summary judgment was granted in defendants' favor as to both claims on the ground that defendants did not have the required knowledge to be liable under the FCA. "The only reasonable inference that can be drawn from the undisputed evidence is that Lewis (and the entities he controlled) had no actual knowledge during the pertinent time period that the common ownership either prohibited Lewis from referring patients to AMS or that AMS failed to qualify as a dialysis supplier because of the common ownership. Neither can it be inferred that Lewis deliberately ignored or acted in

---

[4] As to the previously dismissed "discount" claim, it was again held that relator was not an original source of any of the information on which the claim was based. As to the new "assignment" and "Spectra Lab" claims, it was held that they had never been adequately pleaded in the complaint as required by Fed. R. Civ. P. 9(b). Alternatively, it was held that relator was not an original source as regards these claims, including there being no evidence the claims had been previously disclosed to the government.

reckless disregard of the truth. Therefore, it cannot be found that Lewis knowingly presented or knowingly caused to be presented any false Medicare claims and defendants are entitled to summary judgment on the remaining FCA claims." Bidani III, 2001 WL 32868 at *10.

Judgment was entered on January 12, 2001 and relator moved for reconsideration within the time limit provided in Fed. R. Civ. P. 59(e). A Rule 59(e) motion for reconsideration is appropriate when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court." Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990) (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)). Rule 59(e) relief is also appropriate when a legal error has been committed due to inadvertence or misapprehension. See Waunakee, 906 F.2d at 1191-92 (quoting Belmont v. Erie Ry., 52 Barb. 637, 641 (N.Y. Sup. 1869) (Cardozo, J.)). Otherwise, ignoring properly preserved legal error timely brought to the district court's attention after the entry of judgment would put the parties through the unnecessary expense and delay of having to appeal the case to get the error corrected. Divane v. Krull Electric Co., 194 F.3d 845, 850 (7th Cir. 1999) (quoting Moro v.

Shell Oil Co., 91 F.3d 872, 876 (7th Cir. 1996)). Thus, a "Rule 59(e) motion to alter or amend a judgment properly may be used to ask a district court to reconsider its judgment and correct errors of law." United States Labor Party v. Oremus, 619 F.2d 683, 687 (7th Cir. 1980). Accord Danenberger v. Johnson, 821 F.2d 361, 363 (7th Cir. 1987); Reich v. Local 1, American Postal Workers Union, AFL-CIO, 1994 WL 33971 *1 (N.D. Ill. Feb. 4, 1994). See also Ray E. Friedman & Co. v. Jenkins, 824 F.2d 657, 660 (8th Cir. 1987) (Rule "59(e) provides a means 'to support reconsideration [by the court] of matters properly encompassed in a decision on the merits.' White v. New Hampshire Department of Employment Security, 455 U.S. 445, 451 (1982). Under rule 59(e) the court may reconsider issues before it, see id., and generally may examine the correctness of the judgment itself."). However, while a Rule 59(e) motion is a proper procedure for bringing to the court's attention legal errors in the proceedings, relief is not appropriate if the issue was not properly raised during the proceedings. A Rule 59(e) motion is not the appropriate mechanism for presenting new issues that could have been raised during the pendency of the original proceeding. Divane, 194 F.3d at 850; United States v. 47 West 644 Route 38, Maple Park, Ill., 190 F.3d 781, 783 (7th Cir. 1999), cert. denied, 529 U.S. 1005 (2000); Moro, 91 F.3d at 876; Caisse Nationale de Credit Agricole v. CBI Industries, Inc., 90 F.3d 1264, 1269-70 (7th Cir. 1996); Publishers Resource, Inc. v. Walker-Davis Publications, Inc., 762 F.2d 557, 561 (7th Cir. 1985) (quoting Keene Corp. v.

International Fidelity Insurance Co., 561 F. Supp. 656, 665-66 (N.D. Ill. 1982), aff'd, 736 F.2d 388 (7th Cir. 1984)). Cf. Anderson v. Cornejo, 199 F.R.D. 228, 253 (N.D. Ill. 2000).

"The inquiry into whether a court may hear a qui tam relator's claim has three parts: (1) Have the allegations made by the plaintiff been 'publicly disclosed'? (2) If so, is the lawsuit 'based upon' that publicly disclosed information? (3) If so, is the plaintiff an 'original source' of the information?" United States v. Bank of Farmington, 166 F.3d 853, 859 (7th Cir. 1999). The burden is on relator to show that he satisfies this jurisdictional requirement. Bidani I, at 6-7. In Farmington, 166 F.3d at 863, the Seventh Circuit followed the Fourth Circuit (see United States ex rel. Siller v. Becton Dickinson & Co., 21 F.3d 1339, 1347-48 (4th Cir.), cert. denied, 513 U.S. 928 (1994)) in adopting the view that the "based upon" provision means the claim must be "derived from" the public disclosure, not merely based on similar or identical facts. In other words, a claim is based on the public disclosure if the relator got his or her information from the public disclosure. Farmington, 166 F.3d at 863. If a claim is not based upon the public disclosure, then the relator need not be an original source of the information.

In his reconsideration motion, relator clarifies that he contends that none of his claims were derived from the public disclosures and therefore he did not have to be an original source. The pertinent public disclosures related to the FCA claims were disclosures made in the pleadings of a state court

case between Bidani and Lewis. See Bidani I, at 8-10. This court held that disclosures to a party during discovery are not public disclosures; it was the inclusion of the information in public pleadings that constituted public disclosure. Id. at 8. See also Bidani III, 2001 WL 32868 at *2 n.2. Relator contends that he could not have derived his knowledge from the public disclosure in the court pleadings because he was the author of the pleadings and therefore had to have knowledge prior to the public filing of the pleadings.

It is a close question whether this contention is a postjudgment attempt to raise a new issue or a clarification of previously raised contentions. Until Farmington, the "derived from" construction of the statute was a minority view adopted only by the Fourth Circuit in Siller. Therefore, relator had reason for not raising this contention prior to the issuance of Farmington in 1999.[5] Farmington was the law of this Circuit well before the briefing that resulted in the Bidani III ruling and was cited by both parties in the briefs for that ruling. Relator did contend in one of his briefs that his claims were not based upon a public disclosure.

> There is no contention in this case that any competent or responsible public official learned of any essential information before Bidani informed them. As the [Farmington] opinion made clear, Id, 166 F.3d at 859, "Whether the plaintiff is an original source is immaterial unless there has been a public disclosure." In

---

[5]Farmington was decided after Bidani I and after relator's brief had been filed for Bidani II.

> other words, the exercise of determining what
> Bidani learned in the state court litigation as
> opposed to learning it earlier is unnecessary
> because none of it was "public disclosure."

Relator Memo. in Opposition to Defendant's Motion for Summary Judgment at 13 (Docket Entry 106).

While this contention denies that relator relied upon a public disclosure, he does not specifically refer to the "derived from" standard or even the page of Farmington on which that standard is adopted. See Farmington, 166 F.3d at 863. Nevertheless, relator denied that he relied upon a public disclosure and this court finds it proper to exercise its discretion to grant reconsideration in order to apply the correct jurisdictional standard. Therefore, the public disclosure/original source issue will be reconsidered in light of Farmington's "derived from" standard.

Applying the proper standard, relator is correct in contending that his qui tam action is not based upon a public disclosure. No public disclosure occurred until Bidani disclosed the pertinent allegations in the state court lawsuit. Bidani necessarily had the pertinent knowledge through discovery before it was actually publicly disclosed in a court pleading. Therefore, he could not have derived his knowledge from the public disclosure itself. Since his qui tam action is not based upon a public disclosure, he need not satisfy the original source requirement. See Farmington, 166 F.3d at 859. Thus, the original source requirement of prior disclosure to the government

does not apply.  Also, to the extent relator learned of new
allegations through discovery in the present qui tam action, such
claims also would not be barred by public disclosure and may
properly be raised.  Wang v. FMC Corp., 975 F.2d 1412, 1416 (9th
Cir. 1992).

Although it is now held that the discount, assignment,
and Spectra Lab claims are not subject to dismissal because of
public disclosure, it still has to be considered whether these
claims should otherwise survive summary judgment.  To the extent
the latter two claims would survive summary judgment, then leave
would be granted to amend the complaint so as to satisfy the
pleading requirements of Rule 9(b).  If the claims would not
survive summary judgment, then amendment would be futile and
there would be no reason to grant leave to amend.  Bethany
Pharmacal Co. v. QVC, Inc., 241 F.3d 854 (7th Cir. 2001).[6]  One
difficulty with determining whether these claims would survive
summary judgment (or even survive a motion to dismiss) is that,
since they were not pending claims at the time, defendants do not
address these claims in their own motion for summary judgment.
Relator did make reference to all three claims in his motion for

---

[6]In Bidani III, 2001 WL 32868 at *4, it was indicated
that the government would have to be notified of the new claims
as required by § 3730(b).  That, however, would not be a basis
for denying leave to amend.  See United States ex rel. Wisz v.
C/HCA Development, Inc., 31 F. Supp. 2d 1068, 1069 (N.D. Ill.
1998); United States ex rel. Mikes v. Strauss, 931 F. Supp. 248,
259 (S.D.N.Y. 1996).  In any event, as is discussed below,
plaintiff has not shown that the new claims are viable so there
will be no issue of amending the complaint or notifying the
government.

summary judgment and defendants had the opportunity to respond to this motion. Although relator's motion does not directly raise the issue of whether the claims would survive a summary judgment motion by defendant, if relator is not entitled to summary judgment, the contentions and factual support in relator's motion can also be considered in determining whether there is any likelihood that the claims would survive if reinstated or amendment were permitted.

As regards the assignment claim, relator conclusorily asserts in favor of its summary judgment motion that AMS was not entitled to directly receive Method II payments because patients did not sign the Method II billing form nor did defendants have any signatures on file as was usually stated on the form. Neither relator's summary judgment brief nor the present motion cite any legal support for the signature requirement nor does relator make any attempt to fit it into an FCA claim. Instead, he conclusorily states that "[w]ith no assignments, no right existed for Medicare payment to be made to AMS." Rel. Corrected Memo. in Support of Summary Judgment at 15 (Docket Entry 99). Relator points to the following provision on the reverse side of the billing form (Form 1450): "INSURED'S OR AUTHORIZED PERSON'S SIGNATURE. I authorize payments of medical benefits to the undersigned physician or supplier for services described above." Defendants point to the form on which a patient may select Method II (Form 382). On that form patients signed after the following statement: "If I have chosen Method II, by my

signature, I certify that I have only one Method II supplier. Further, I understand that if my supplier does not take assignment, Medicare will not pay anything toward my supplier's bill." Relator points to no regulation requiring that the patient also sign a separate assignment form nor any evidence that defendants were aware that they were violating any regulation. Since relator has not provided evidence (or a sufficient argument) in support of his assignment claim, he will not be permitted to file an amended complaint raising that claim.

The claims in this case are limited to damages accrued from September 15, 1991 until AMS ceased operations in 1994. See Bidani III, 2001 WL 32868 at *1, *10. During that time period, the anti-kickback provision of the Medicare statutes provided in part:

> (1) whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—
> * * *
> (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service or item for which payment may be made in whole or in part under subchapter XVIII of this chapter or a State health care program,
> shall be guilty of a felony . . . .
> * * *
> (3) Paragraph[] (1) . . . shall not apply to—
> (A) a discount or other reduction in price obtained by a provider of services . . . if the reduction in price is properly disclosed and appropriately reflected in the

          costs claimed or charges made by the
          provider . . . .

42 U.S.C. § 1320a-7b(b).

    Effective July 29, 1991, regulations provided:

        (h) Discounts. As used in section
[1320a-7b], "remuneration" does not include a
discount, as defined in paragraph (h)(3) of this
section, on a good or service received by buyer,
which submits a claim or request for payment for
the good or service for which payment may be made
in whole or part under Medicare or a State health
care program, from a seller as long as the buyer
complies with the applicable standards of
paragraph (h)(1) of this section and the seller
complies with the applicable standards of
paragraph (h)(2) of this section:
        (1) With respect to the following categories
of buyers, the buyer must comply with all of the
applicable standards within each category—
                * * *
        (iii) If the buyer is not an entity
described in (h)(1)(i) or (h)(1)(ii)[7] of this
section, it must comply with all of the following
three standards—
        (A) the discount must be made at the time of
the original sale of the good or service;
        (B) where an item or service is separately
claimed for payment with the Department or State
agency, the buyer must fully and accurately
report the discount on that item or service; and
        (C) the buyer must provide, upon request by
the Secretary or State agency, information
provided by the seller as specified in paragraph
(h)(2)(ii)(A) of this section.
                * * *
        (3) For purposes of this paragraph, the term
discount means a reduction in the amount a seller
charges a buyer (who buys either directly or
through a wholesaler or a group purchasing
organization) for a good or service based on an

---

    [7]Subsection (h)(1)(i) applies to entities which submit
cost reports and subsection (h)(1)(ii) applies to health
maintenance organizations and medical plans. AMS was not the
latter and it is represented that it did not submit cost reports.
Therefore, subsection (h)(1)(iii) would apply to AMS.

- 12 -

>arms length transaction. The term discount may
>include a rebate check, credit or coupon directly
>redeemable from the seller only to the extent
>that such reductions in price are attributable to
>the original good or service that was purchased
>or furnished. The term discount does not
>include—
>
>* * *
>
>(ii) Furnishing one good or service without
>charge or at a reduced charge in exchange for any
>agreement to buy a different good or service.

42 C.F.R. § 1001.952 (1991).

There is no dispute that AMS purchased dialysis supplies at a discount, that is, less than the list price. For purposes of Method II reimbursement, however, AMS charged the list price. There is also no dispute that AMS did not disclose the discount to the appropriate agency. Defendants, however, contend that disclosure was not required because the claim forms (Form 1500) that it submitted for reimbursements did not expressly request information about discounts. Even if the discounts should have been disclosed, defendants contend that any failure to comply lacked the intent necessary for an anti-kickback FCA violation and that any failure to disclose was immaterial.

The anti-kickback statute prohibits knowingly and willfully receiving remuneration for purchasing covered supplies from a seller. It is clear that a discount is a form of remuneration. <u>United States v. Shaw</u>, 106 F. Supp. 2d 103, 114 (D. Mass. 2000); 42 C.F.R. § 1001.952(h). If certain requirements are met, however, the discount will not be considered to be remuneration barred by the statute. One of

those requirements is that the discount be fully and accurately reported. Regardless of whether a particular form provided a space for such information, prior to September 1991, the law was clear that the discount had to be reported to except it from the kickback prohibition. 42 U.S.C. § 1320a-7b(b)(3)(A) (1991); 42 C.F.R. § 1001.952(h)(1)(iii)(B) (1991). Still, the anti-kickback statute is not violated unless such noncompliance is knowing and willful. United States ex rel. Walsh v. Eastman Kodak Co., 98 F. Supp. 2d 141, 149 (D. Mass. 2000).

Defendants point to evidence that the claim forms did not expressly require the reporting of discounts and testimony from their attorneys that they did not recall advising defendants to report the discounts. It can reasonably be inferred from this evidence that Lewis (and, hence, AMS) did not knowingly and intentionally fail to comply with the reporting requirement that would have brought the discounts within a safe harbor of the statute. On the other hand, relator points to evidence that defendants' attorneys published a September 1991 article in a nephrology journal expressly referring to the need to report the discounts. See James Riley & Robert Pristave, "Safe Harbor Regulations Are Official, But Provide Little Room to Anchor," Nephrology News & Issues 14 (Sept. 1991). From this, it can be inferred that they would have advised clients like Lewis of this information and it is also possible that Lewis saw the article. Moreover, contracts with one of the medical supply companies had express provisions referring to the need to report the discounts.

It can reasonably be inferred that Lewis (and AMS) were aware of the remuneration prohibition and that discounts were illegal remuneration absent disclosure. Therefore, a genuine factual dispute exists as to whether defendants' knowingly and willfully violated the anti-kickback statute and FCA. The discount claim as against Lewis and AMS will be reinstated.[8]

In his summary judgment motion, relator also contends that defendants received free laboratory tests from Spectra Labs in return for using Spectra Labs for work reimbursed through Method II. However, the documents purportedly supporting these contentions were not provided to the court. See Relator's Corrected Statement of Facts in Support of Summary Judgment (Docket Entry 100) ¶ 142 (citing Exh. 58); Relator's Memo. in Support of Summary Judgment (Docket Entry 99) at 21 (citing Exh. 98).[9] Because no factual support was provided for these contentions, no claim concerning Spectra Labs will be reinstated or, more accurately, relator will not be permitted to amend his complaint to add such a claim.

---

[8] Defendants assert that, even if the discounts had been properly disclosed, AMS still would have received reimbursement at the list price. If so, then there is no violation of the FCA and no recoverable damages for the discount claim. See Bidani III, 2001 WL 32868 at *6 (materiality is an element of an FCA claim). Nothing in the record, though, establishes that the government would have ignored the discounts and paid the list price.

[9] Although relator provided exhibits numbered as high as 106, it reserved many of the numbers instead of numbering consecutively. Exhibits 58 and 98 were reserved.

Last, relator contends that there is adequate evidence to support that the knowledge element of his kickback and supplier claims was satisfied. Bidani III, 2001 WL 32868 at *6-10, adequately sets forth the basis for concluding otherwise. Relator's present arguments are not convincing that an error was made. This aspect of the motion will be denied.

IT IS THEREFORE ORDERED that Anil Bidani's motion for rehearing [117] is granted in part and denied in part. The judgment previously entered in this case is vacated. All claims and defendants remain dismissed from this action except the discount claims against defendants Edmund Lewis and American Medical Supply Company. In open court on August 29, 2001 at 11:00 a.m., the remaining parties shall submit an original and one copy of a final pretrial order in full compliance with Local Rule 16.1 and Local Rule Form 16.1.1.

ENTER:

/s/ William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: JUNE 28, 2001