# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 97 C 6502 | DATE | DEC. 13, 2001 |
| CASE TITLE | UNITED STATES ex rel. ANIL K. BIDANI, M.D. v. EDMUND J. LEWIS, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Bidani's motion to file an amended complaint [143] is granted in part and denied in part. Leave is granted to file the amended complaint with Counts II, III, IV, and V stricken. Paragraph 16 of Count I is stricken after the word "supplies." Defendants' motion for judgment on the pleadings (construed as a motion to dismiss) [140] is denied. Within two weeks, defendants Lewis and AMS shall answer the amended complaint. In open court on January 23, 2002 at 11:00 a.m., the parties shall present an original and one copy of their final pretrial order in full compliance with Local Rule 16.1 and Local Rule Form 16.1.1.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 4 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | DEC 14 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | DEC 13 2001 date mailed notice | |
| CW courtroom deputy's initials | | Date/time received in central Clerk's Office | mqm mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ex rel. )
ANIL K. BIDANI, M.D., )
 )
        Plaintiff, )
 )
   v. ) No. 97 C 6502
 )
EDMUND J. LEWIS, AMERICAN )
MEDICAL SUPPLY CORPORATION, and )
CIRCLE MEDICAL MANAGEMENT )
CORPORATION, ) DOCKETED
 )
        Defendants. ) DEC 1 4 2001

## MEMORANDUM OPINION AND ORDER

The relator in this qui tam action, Anil Bidani, M.D., is a former employee of an entity controlled by defendant Edmund Lewis, M.D. ("Lewis"). The other two defendants, American Medical Supply Corporation ("AMS") and Circle Medical Management Corporation ("CMM") are entities owned and controlled by Lewis. In the present lawsuit, relator alleged that defendants made false and excessive claims for kidney dialysis reimbursements under the federal Medicare program. From 1991 through 1997, Bidani, the present defendants, and related entities were engaged in state court litigation concerning Bidani's alleged ownership and profit interests in the entities. See Bidani v. Lewis, 285 Ill. App. 3d 545, 675 N.E.2d 647 (1st Dist. 1996), appeal denied, 172 Ill. 2d 547, 679 N.E.2d 378 (1997). Many of the facts

underlying the federal complaint were learned by Bidani either through his prior association with defendants and the entities or in the state court litigation.

In September 1997, the present qui tam action was filed under seal. In June 1998, the government declined pursuing the case and shortly thereafter defendants were served. Defendants moved to dismiss the action. On December 29, 1998, that motion was granted in part and denied in part. All claims were dismissed except the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, claims based on violation of the anti-kickback provisions of 42 U.S.C. § 1320a-7b(b) through self-referral of dialysis patients to a commonly owned corporation. These remaining claims were limited to those accruing September 15, 1991 or later. See United States ex rel. Bidani v. Lewis, 1998 WL 1820753 (N.D. Ill. Dec. 29, 1998) ("Bidani I"). Discovery was ordered to be completed by April 29, 1999. See id. at *11. Both sides moved for reconsideration of that ruling. Defendants' motion to reconsider was summarily denied. Minute Order dated Jan. 14, 1999 (Docket Entry 29). After further briefing, relator's motion was granted in part and denied in part. The claim based on AMS not qualifying as a dialysis supplier was reinstated to the extent it was based on common ownership with a dialysis facility. See United States ex rel. Bidani v. Lewis, 1999 WL 163053 (N.D. Ill. March 12, 1999) ("Bidani II"). Relator did not argue that other types of claims should be reinstated or

that the court ignored claims contained in the complaint, nor did relator seek to amend the complaint.[1]

The parties engaged in substantial discovery and a number of extensions of the discovery closing date were granted. See Minute Order dated April 20, 1999 (Docket Entry 44) (extending discovery to July 19, 1999); Minute Order dated July 21, 1999 (Docket Entry 51) (extending discovery to Sept. 15, 1999); Minute Order dated Sept. 7, 1999 (Docket Entry 57) (extending discovery to Oct. 13, 1999); Minute Order dated Nov. 10, 1999 (Docket Entry 72) (extending discovery to Dec. 8, 1999); Minute Order dated Dec. 8, 1999 (Docket Entry 76) (extending discovery to Jan. 26, 2000); Minute Order dated May 25, 2000 (Docket Entry 83) (extending discovery to June 30, 2000);[2] Minute Order dated July 5, 2000 (Docket Entry 86) (for limited purposes, extending discovery to Aug. 1, 2000). On August 16, 2000, discovery having finally been completed, filing of the final pretrial order was set for October 4, 2000, which was later changed to October 5. The parties were informed that filing of the final pretrial order would be postponed if either party instead filed a summary

---

[1] The aspects of relator's reconsideration motion that were denied concerned the appropriate cutoff date for the statute of limitations, see Bidani II, 1999 WL 163053 at *3-9, and issues concerning relator being an original source, see id. at *1 n.1.

[2] From March 1 to May 25, 2000, discovery was stayed pending a ruling by the Supreme Court that was potentially dispositive of Bidani's claims. See Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765 (2000) (qui tam relators satisfy standing requirement).

judgment motion by that date. Both parties moved for summary judgment.

At that time, relator did not move to amend the complaint or reinstate any claims previously dismissed, but did seek summary judgment on claims that had previously been dismissed and claims that had never been included in the complaint. In ruling on summary judgment, the court only considered the kickback and supplier claims that had not been dismissed on the prior motion to dismiss. Relator's summary judgment motion was denied, but defendants' summary judgment motion was granted and the case was dismissed. See United States ex rel. Bidani v. Lewis, 2001 WL 32868 (N.D. Ill. Jan. 12, 2001) ("Bidani III"). Pursuant to Fed. R. Civ. P. 59(e), Bidani timely moved for reconsideration. It was a "close question" whether the argument raised by relator was a new contention that would not be appropriate for a Rule 59(e) motion, but it was found that the issue was appropriately raised. See United States ex rel. Bidani v. Lewis, 2001 WL 747524 *3-4 (N.D. Ill. June 29, 2001) ("Bidani IV"). It was held that two claims not previously included in the complaint (the "assignment" and "Spectra Lab" claims) and one claim that was in the complaint (the "discount" claim) were not subject to dismissal on public disclosure/original source grounds. See id. at *4. See also 31 U.S.C. § 3730(e)(4); Bidani I, 1998 WL 1820753 at *3-6. As to the assignment and Spectra Lab claims, it was held that the evidence presented on summary judgment failed to support those claims and therefore they were otherwise subject to dismissal on

summary judgment and it would be futile to permit an amendment of the complaint even if one had been requested. See Bidani IV, 2001 WL 747524 at *4-5, 7. It was held that adequate evidence and law supported the discount claims. Therefore, the discount claims only, which were against Lewis and AMS (but not CMM), were reinstated. See id. at *5-7. August 29, 2001 was set as the date to submit the final pretrial order as to the remaining discount claims. Id. at *7.

On July 18, 2001, the two remaining defendants moved to reconsider Bidani IV, contending that summary judgment should be reconsidered because defendants had not had an adequate opportunity to respond in that any discount claims contained in the complaint had been dismissed nearly two years before the motions for summary judgment. Relator, however, had raised the claims in his motion for summary judgment. Even if defendants assumed the court would ignore those arguments because the claims had previously been dismissed (as defendants pointed out in their response to summary judgment), the issue was again raised in relator's motion to reconsider Bidani III. At the time defendants presented their reconsideration motion, the court commented: "I don't think you folks have really focused on every aspect of this case. At least it seems like an issue comes up that wasn't briefed, it wasn't considered, and so we have another round." July 18, 2001 Tr. at 2. The court declined to consider the merits of the summary judgment discount claim arguments defendants attempted to raise in their reconsideration motion.

See id. at 2-4. See also Minute Order dated July 18, 2001 (Docket Entry 133). The court indicated that enough piecemeal motions had already been filed and it was time to proceed to trial instead. See July 18, 2001 Tr. at 7.

At the July 18 hearing, defense counsel also stated that the discount claims were not adequately pleaded. Id. at 5. On August 3, 2001, defendants served their answer to the discount allegations of the complaint in which they pleaded the affirmative defense that relator's discount allegations failed to satisfy the pleading requirements of Fed. R. Civ. P. 9(b). At the same time, defendants also submitted their motion for leave to file a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings. Defendants again sought to argue, based on regulations and other administrative documents for which judicial notice was sought, that the discount claims were without merit because (a) there was no obligation to disclose the discounts and/or (b) disclosure of the discounts was not material because, even if disclosed, the amounts of the Medicare reimbursements would not have changed. On August 8, 2001, leave to file the motion was granted and a briefing schedule was set on the Rule 12(c) motion. See Minute Order dated Aug. 8, 2001 (Docket Entry 137).

On August 22, 2001, the same day that his answer to the Rule 12(c) motion was due, relator submitted his motion for leave to file an amended complaint. More than ten years after filing the related state court action, more than four years after filing

the present *qui tam* action, after discovery in the state court and extensive discovery in the federal court, more than one year after the completion of discovery, almost a year after the original date set for filing of the pretrial order, after rulings on a motion to dismiss and related reconsideration motions, after rulings on cross motions for summary judgment and two related reconsideration motions, after defendants' motion for judgment on the pleadings, and with the only pending claims being the discount claims, for the first time relator moved to amend his *qui tam* complaint. Relator does not merely move to add specific allegations to his discount claims to ensure that Rule 9(b) is satisfied. Instead, the proposed amended complaint contains five counts.

Count I of the proposed amended complaint contains the restated discount claims, but ¶ 16 also includes the allegation that, in addition to discounts from the list price, defendants received "free trips to Florida, free training, free supplies such as cyclers and dialysate to the Lewis corporations and employees. The free trips, training, education and supplies were kickbacks which could not be redeemed by disclosing them in making claims and constituted *per se* violations of the Anti-Kickback statute." Although relief is sought for claims going back to 1987, Count I contains a footnote acknowledging that the court has limited the claims to those accruing September 17 [sic], 1991 or later. Count II contains the kickback claims based on self-referral. Relator states

in its motion that these claims were "originally" dismissed on original source grounds that are no longer applicable. However, Count II appears to be a restatement of the self-referral kickback claims that were not dismissed on public disclosure/original source grounds, see Bidani I, 1998 WL 1820753 at *5-6, but instead were dismissed on summary judgment because relator did not present evidence to support the knowledge element. See Bidani III, 2001 WL 32868 at *10; Bidani IV, 2001 WL 747524 at *7. Even if the Count II kickback claims are distinguishable from those dismissed in Bidani III, no other kickback claim has ever been reinstated. In the motion ruled upon in Bidani IV, relator clarified his public disclosure argument and contended certain claims should not have been dismissed on public disclosure/original source grounds. If there were additional claims to be reinstated, it was incumbent on relator to move for their reinstatement. Relator has never so moved; the motion for leave to file an amended complaint is not such a motion and contains no supporting argument, and it is now too late to move to reinstate claims and add new claims. Count II does not contain pending claims. Relator acknowledges that Count III contains the supplier claims that were dismissed in Bidani III, 2001 WL 32868 at *10, and represents that this count is only included to make clear he is not waiving these claims by amending his complaint. Count IV is a claim that AMS did not qualify as a supplier because it did not function as such. Such a claim is distinct from the supplier claims based on

AMS not qualifying as a supplier because of common ownership. See Bidani II, 1999 WL 163053 at *1. Relator represents that it is unclear whether the Count IV supplier claim has been dismissed. It is very clear that this claim has been dismissed. Bidani II, 1999 WL 163053 at *9, expressly stated that the supplier claim was reinstated only "to the extent such claim is based on common ownership with a dialysis facility." Moreover, Bidani IV, 2001 WL 747524 at *7 (emphasis added), clearly states: "All claims and defendants remain dismissed except the discount claims against defendants" Lewis and AMS. Count IV is not a discount claim. Count V states a claim based on excessive reimbursements that predate September 17 [sic], 1991. In his motion and the proposed amended complaint itself, relator expressly acknowledges that such claims were dismissed because outside the applicable statute of limitations, see Bidani I, 1998 WL 1820753 at *11; Bidani II, 1999 WL 163053 at *3-9, and relator represents that they are only included in the amended complaint to avoid any possibility of waiver.

As is explained above, the only claims that remain pending are the discount claims that accrued September 15, 1991 or later.[3] Relator cannot reinstate additional claims or instate (or preserve) new claims by including them in an amended complaint filed at this time. It is too late in these

---

[3]The latest end date of the range is sometime in 1994 when AMS ceased operations. See Bidani IV, 2001 WL 747524 at *5; Bidani III, 2001 WL 32868 at *10.

proceedings to add new claims or again argue that new or old claims should not have been dismissed. Relator will be permitted to file the amended complaint, but limited to Count I with the previously quoted language stricken from ¶ 16 of Count I.

Defendants' motion for judgment on the pleadings will now be considered. The arguments made by defendants will be considered as regards Count I of the amended complaint. Because the amended complaint has not yet been answered, defendants' motion is, in effect, a Rule 12(b)(6) motion to dismiss, not a Rule 12(c) motion for judgment on the pleadings. See Forseth v. Village of Sussex, 199 F.3d 363, 368 n.6 (7th Cir. 2000). The label is of no import since the same standards apply for both types of motions. Id.; Hentosh v. Herman M. Finch University of Health Sciences/The Chicago Medical School, 167 F.3d 1170, 1173 n.2 (7th Cir. 1999); Anderson v. Cornejo, 199 F.R.D. 228, 246 (N.D. Ill. 2000). On a Rule 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations of fact are taken as true and all reasonable inferences are drawn in the plaintiff's favor. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164-65 (1993); Swofford v. Mandrell, 969 F.2d 547, 549 (7th Cir. 1992). A complaint need not set forth all relevant facts or recite the law; all that is required is a short and plain statement showing that the party is entitled to relief. Fed. R. Civ. P. 8(a); Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996). A plaintiff in a suit in federal court need not plead facts; conclusions may be pleaded

as long as the defendant has at least minimal notice of the claim.[4] Fed. R. Civ. P. 8(a)(2); Jackson v. Marion County, 66 F.3d 151, 153-54 (7th Cir. 1995); Albiero v. City of Kankakee, 122 F.3d 417, 419 (7th Cir. 1997). It is unnecessary to specifically identify the legal basis for a claim. Forseth, 199 F.3d at 368; Albiero, 122 F.3d at 419; Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992). It is also true, however, that a party can plead him or herself out of court by alleging facts showing he or she has no viable claim. Jackson, 66 F.3d at 153-54; Tregenza v. Great American Communications Co., 12 F.3d 717, 718 (7th Cir. 1993), cert. denied, 511 U.S. 1085 (1994); Early v. Bankers Life & Casualty Co., 959 F.2d 75, 79 (7th Cir. 1992). Further, as long as they are consistent with the allegations of the complaint, a plaintiff may assert additional facts in his or her response to a motion to dismiss. Forseth, 199 F.3d at 368; Hentosh, 167 F.3d at 1173 n.3; Albiero, 122 F.3d at 419; Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996); Highsmith v. Chrysler Credit Corp., 18 F.3d 434, 439-40 (7th Cir. 1994); Hrubec v. National Railroad Passenger Corp., 981 F.2d 962, 963-64 (7th Cir. 1992). Although the complaint itself need not specifically or correctly identify the legal basis for any claim, in response to a motion to dismiss that

---

[4]To the extent Fed. R. Civ. P. 9(b) applies, relator must also provide specific factual allegations. See Bidani I, 1998 WL 1820753 at *10. The pending motion to dismiss does not make any arguments based on Rule 9(b).

raises issues as to a claim, the plaintiff must identify the legal basis for the claim and make adequate legal arguments in support of it. Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041-42 (7th Cir. 1999); Stransky v. Cummins Engine Co., 51 F.3d 1329, 1335 (7th Cir. 1995); Levin v. Childers, 101 F.3d 44, 46 (6th Cir. 1996); Carpenter v. City of Northlake, 948 F. Supp. 759, 765 (N.D. Ill. 1996). See also Teumer v. General Motors Corp., 34 F.3d 542, 545 (7th Cir. 1994). Additionally, without converting the motion to one for summary judgment, judicial notice may be taken of historical documents, documents contained in the public record, and reports, decisions, and regulations of administrative bodies. Menominee Indian Tribe of Wisconsin v. Thompson, 161 F.3d 449, 456 (7th Cir. 1998), cert. denied, 526 U.S. 1066 (1999); Northgate Motors, Inc. v. General Motors Corp., 111 F. Supp. 2d 1071, 1077 (E.D. Wis. 2000); Demick v. City of Joliet, 108 F. Supp. 2d 1022, 1025 (N.D. Ill. 2000).

It is alleged that, from September 15, 1991 until AMS ceased operations in 1994, defendants received discounts on certain dialysis supplies. When submitting claims for reimbursement from Medicare, defendants did not disclose the discounts and sought reimbursements substantially in excess of the amounts paid for the supplies. As is discussed in Bidani IV, 2001 WL 747524 at *5-7, during the pertinent time period, the applicable statute (29 U.S.C. § 1320a-7b(b)(1)) prohibited receiving remuneration for purchasing reimbursable supplies. Discounts constituted remuneration unless "the reduction in price

is properly disclosed and appropriately reflected in the costs claimed or charges made." 29 U.S.C. § 1320a-7b(b)(3)(A). See also United States v. Shaw, 106 F. Supp. 2d 103, 114-19 (D. Mass. 2000). Regulations provided that satisfying this safe harbor for a discount required compliance with all three of the following standards:

> (A) the discount must be made at the time of the original sale of the good or service;
> (B) where an item or service is separately claimed for payment with the Department or State agency, the buyer must fully and accurately report the discount on that item or service; and
> (C) the buyer must provide, upon request by the Secretary or State agency, information provided by the seller as specified in paragraph (h)(2)(ii)(A) of this section.

42 C.F.R. § 1001.952(h)(1)(iii) (1991).

Even though the statute expressly states that the discount must both be "properly disclosed" and "appropriately reflected" in the price and the applicable regulations expressly provided that the buyer must "fully and accurately report" the discount, defendants contend there were actually no such requirements. Defendants contend that 1999 amendments to the regulations clarify that affirmative disclosure is only required when requested by the agency. Defendants contend the 1999 amendments serve as clarification, not modification, of the regulations in force from 1991 through 1994. Defendants also contend that administrative documents show that, even if the discounts had been disclosed, there would have been no reduction in the amounts reimbursed and therefore relator's claims would

fail on materiality grounds. See Bidani IV, 2001 WL 747524 at *7 n.8; Bidani III, 2001 WL 32868 at *6.

The current version of 42 C.F.R. § 1001.952(h)(1)(iii) does not contain former subsection (B) which required full and accurate reporting. Instead, it provides that the buyer must comply with the following two requirements:

> (A) The discount must be made at the time of the sale of the good or service or the terms of the rebate must be fixed and disclosed in writing to the buyer at the time of the initial sale of the good or service; and
> (B) The buyer (if submitting the claim) must provide, upon request by the Secretary or a State agency, information provided by the seller as specified in paragraph (h)(2)(iii)(B) of this section, or information provided by the offeror as specified in paragraph (h)(3)(iii)(A) of this section.

Defendants place substantial reliance on commentary to the 1999 amendments in which the amendments are generally referred to as clarifications. See Medicare & State Health Care Programs: Fraud & Abuse; Clarification of the Initial OIG Safe Harbor Provisions & Establishment of Additional Safe Harbor Provisions Under the Anti-Kickback Statute, 64 Fed. Reg. 63518, 63518-19 (Nov. 19, 1999). See also Medicare and State Health Care Programs: Fraud and Abuse; Clarification of the OIG Safe Harbor Anti-Kickback Provisions, 59 Fed. Reg. 37202, 37203 (July 21, 1994) (proposed rule change). Defendants ignore that the specific amendment on which they rely is described as a change and, moreover, it is specifically noted that buyers such as AMS had been required to disclose the discounts. See 64 Fed.

Reg. at 63529 ("We are eliminating the safe harbor requirement that charge-based buyers . . . disclose the amount of discounts on claims submitted to the Federal programs."). Elimination of a previously existing requirement is not a mere clarification of a prior rule. Moreover, the commentary to the 1999 amendments specifically addresses the possibility of providing a transition or grace period and declines to do so. See id. at 63520-21. It is stated that the agency will instead use its discretion to be fair to parties that had entered into arrangements in good faith. To the extent defendants acted in good faith in not expressly reporting discounts or failing to appropriately reflect the discount in the reimbursement sought, they are fully protected in the present action in that they will not have the necessary mens rea to be liable under the FCA. See Bidani IV, 2001 WL 747524 at *6. See, e.g., Bidani III, 2001 WL 32868 at *10 (dismissing other claims for failure to provide adequate evidence supporting the mens rea element). No sufficient basis is presented for modifying this court's prior construction of the discount provisions of the statute and regulations.[5]

Defendants' other contention is that the failure to disclose the discounts was not material because the payments to

---

[5]In addition to regulations, HCFA had program manuals and other publications (in effect during the 1991-94 time period) which likely provide more detailed descriptions of HCFA's practices. In the numerous (and often oversized) briefs that have been filed in this action, neither side has been particularly helpful in pointing the court to the applicable rules.

AMS would not have been affected even if the discounts had been disclosed. As support for this contention, defendants cite commentary for 1992 amendments setting new caps for "Method II" reimbursement, the method under which AMS was paid. See generally Bidani I, 1998 WL 1820753 at *1; Bidani III, 2001 WL 32868 at *5, 7-8. Defendants point to the comment that the Health Care Financing Authority ("HCFA") "could not set the payment cap solely on suppliers' costs because we do not have access to suppliers' costs; only facilities' costs are reported to us." Medicare Program; Payment Change for Home Dialysis, 57 Fed. Reg. 54179, 54182 (Nov. 17, 1992). Defendants also cite the following comments: "A commenter suggested that HCFA should study the real costs of Method II in case the cap makes Method II unviable. Response: The OIG has studied these costs in its investigation of CAPD (report number CIN: A-09-87-00108)[6] and found that the real costs of CAPD are considerably lower than the cap. Nevertheless, we decided to set the cap at the maximum amount allowed by law." Id. at 54185. Perhaps, if reported, the HCFA would have ignored the discounts in determining the appropriate amounts to pay AMS. The cited commentary, however, does not show this. It only shows HCFA's response to some pieces of generalized information. Absent regulations or rules conclusively showing that the discounts were immaterial to the HCFA,

---

[6]This is the December 1988 audit report discussed in Bidani III, 2001 WL 32868 at *7-8.

materiality will be a factual question that cannot be resolved on a motion to dismiss.

Defendants' motion for judgment on the pleadings, treated as a motion to dismiss, will be denied.

IT IS THEREFORE ORDERED that Bidani's motion to file an amended complaint [143] is granted in part and denied in part. Leave is granted to file the amended complaint with Counts II, III, IV, and V stricken. Paragraph 16 of Count I is stricken after the word "supplies." Defendants' motion for judgment on the pleadings (construed as a motion to dismiss) [140] is denied. Within two weeks, defendants Lewis and AMS shall answer the amended complaint. In open court on January 23, 2002 at 11:00 a.m., the parties shall present an original and one copy of their final pretrial order in full compliance with Local Rule 16.1 and Local Rule Form 16.1.1.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: DECEMBER 13, 2001